IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARC FIEDLER )
2737 Devonshire Place, N.W., # 316 )
Washington, D.C. 20008 )
)
and )
)
EQUAL RIGHTS CENTER )
11 Dupont Circle, N.W., Suite 400 )
Washington, D.C. 20036 )
)
Plaintiffs, )
)
v. ) Civil Action No.
)
MHG Café Dupont, LLC, )
t/a Circa at Dupont )
1601 Connecticut Avenue, N.W. )
Washington, DC 20009 )
)
Serve: Corporation Service Company )
1090 Vermont Ave., N.W. )
Washington, D.C. 20005 )
)
Defendant. )

**COMPLAINT FOR INJUNCTIVE RELIEF
AND FOR COMPENSATORY AND PUNITIVE DAMAGES**

Plaintiffs Equal Rights Center and Marc Fiedler (collectively, the "Plaintiffs"), as and for their Complaint against MHG Café Dupont, LLC, t/a Circa at Dupont (the "Defendant"), allege as follows:

**INTRODUCTION**

1. The Equal Rights Center and Marc Fiedler bring this action under Title III of the

Americans with Disabilities Act of 1990 ("ADA"), Pub. L. 101-336, §§ 301-310, 104 Stat. 327 (codified at 42 U.S.C. §§ 12181-12189), its implementing regulations, 28 C.F.R., Pt. 36 & App. A, and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01 to -1431.08, to secure relief from this Court in connection with Defendant's unlawful discrimination against persons with disabilities.

2. Defendant MHG Café Dupont, LLC owns, operates, or leases a restaurant named Circa at Dupont, which is a place of public accommodation subject to the ADA and DCHRA. Circa at Dupont opened for business in the Spring of 2007. In the course of its pre-opening alterations, Defendant removed accessible entrance features that had existed at the site prior to the opening of Defendant's restaurant. This resulted in a newly inaccessible restaurant that contains significant barriers to wheelchair users and other persons with disabilities. These barriers, as fully described herein, in addition to Defendant's discriminatory policies and practices, deprive persons with disabilities the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations provided by Defendant at its restaurant. They deter the use of Defendant's restaurant by persons with disabilities and result in discrimination against them.

3. Accordingly, Plaintiffs seek an order from this Court requiring Defendant to rectify certain architectural characteristics of its restaurant and modify its practices, policies and procedures to comply with the ADA and DCHRA. Plaintiffs further seek compensatory and punitive damages, as well as costs, attorneys' fees, and such other relief as this Court deems just and proper.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 because Plaintiffs assert claims under the Americans with Disabilities Act of 1990, Pub. L. 101-336, 104 Stat. 327 (codified at 42 U.S.C. §§ 12101-12213).

5. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C.

§ 1367 because Plaintiffs assert claims under the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01 to -1431.08, which are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.  The Court has personal jurisdiction over Defendant pursuant to D.C. Code § 13-334 because Defendant does business in the District of Columbia, and pursuant to D.C. Code § 13-423 because Plaintiffs' claims for relief arise from Defendant's transaction of business in the District of Columbia.

7.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all of the acts and omissions of Defendant giving rise to this action occurred in the District of Columbia.

## THE PARTIES

8.  Plaintiff Marc Fiedler is a resident of the District of Columbia and a member of the Equal Rights Center. Mr. Fiedler has physical impairments that substantially limit him in the major life activities of walking and performing everyday manual tasks. He uses a wheelchair for mobility.

9.  Plaintiff Equal Rights Center ("ERC") is a membership organization and a not-for-profit corporation organized under the laws of the District of Columbia, with its principal place of business at 11 Dupont Circle, N.W., Suite 400, Washington, D.C. 20036. The ERC's staff and Board of Directors comprise individuals, including persons with disabilities, who have a direct interest in protecting the rights of persons with disabilities. The ERC's membership consists, in part, of persons with disabilities who live throughout the greater Washington, D.C. metropolitan area and others who are interested in, *inter alia,* equal rights, equal access, and equal opportunity for persons with disabilities. One of the principal goals of the Equal Rights Center is the elimination of discrimination against persons with disabilities, which includes the elimination of the discriminatory effects of architectural barriers to access and use of public

accommodations. The ERC pursues this goal through various means, including research, public education, counseling, advocacy, and conciliation. The ERC brings this case as a representative of its members, whose rights to live in and enjoy a community free from discrimination on the basis of physical disability have been infringed by the Defendant. The ERC has suffered the frustration of its purpose and the loss or diversion of resources in counseling this complaint of discrimination at the Circa at Dupont, and in investigating Defendant's conduct.

10. Defendant MHG Café Dupont, LLC t/a Circa at Dupont is a limited liability company formed under the laws of the state of Delaware, with its principal place of business at 1601 Connecticut Avenue, N.W., Washington, DC 20009. Defendant is subject to the provisions of the ADA because it owns, operates, or leases Circa at Dupont, which is a place of public accommodation because it is a restaurant whose operations affect commerce. In addition, Defendant is subject to the provisions of the DCHRA because it owns and operates a restaurant within Washington, D.C.

## FACTS

### ADA and DCHRA Requirements Applicable to Defendant

11. On July 26, 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," including discrimination resulting from "the discriminatory effects of architectural . . . barriers . . . ." 42 U.S.C. § 12101(b)(1) & (a)(5).

12. The public accommodation provisions in Title III of the ADA, which became effective on January 26, 1992, prohibit discrimination against persons with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a).

13. Restaurants, such as Circa at Dupont, are "public accommodations" within the meaning of the ADA. 42 U.S.C. § 12181(7)(B).

14. Under Title III of the ADA, alterations to existing facilities must be made "in

such a manner that, to the maximum extent feasible, the altered portions of the facility are accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(2).

15. Title III of the ADA prohibits public accommodations from affording individuals with disabilities with the opportunity to participate in or benefit from goods, services, privileges, advantages, or accommodations that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

16. Title III of the ADA further prohibits places of public accommodation, like Circa at Dupont, from providing individuals with disabilities with a "good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantages, or accommodation, or other opportunity that is as effective as that provided to others." 42 U.S.C. § 12182(b)(1)(A)(iii).

17. Under Title III of the ADA, unlawful discrimination also includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

18. Title III of the ADA requires places of public accommodation to remove architectural barriers in existing facilities where barrier removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

19. The Department of Justice regulation implementing Title III of the ADA is codified at 28 C.F.R. Part 36 & Appendix A. Appendix A, entitled Standards for Accessible Design ("Standards"), sets standards for accessibility for places of public accommodation, such as restaurants, by individuals with disabilities. These Standards are to be applied during the design, construction, and alteration of such buildings and facilities. 28 C.F.R. § 36.406(a). Measures taken to remove architectural barriers must comply with the Standards unless it is not

readily achievable to do so. 28 C.F.R. § 36.304(d). The Standards provide specific requirements for accessibility regarding entrances, dining areas, and restrooms, among other things.

20.     Standards §§ 5.1-5.9 provide additional specifications for restaurants, and establish standards to ensure that restaurant facilities and equipment shall be accessible to and usable by persons with disabilities, including persons who use wheelchairs.

21.     The DCHRA provides that it is an unlawful discriminatory practice to "deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation" "wholly or partially for a discriminatory reason based on the actual or perceived . . . disability . . . of any individual." D.C. Code § 2-1402.31(a)(1).

22.     The DCHRA further provides that "[a]ny practice which has the effect or consequence of violating any of the provisions of [the DCHRA] shall be deemed to be an unlawful discriminatory practice." D.C. Code § 2-1402.68.

23.     As described more fully below, Defendant has failed to comply with these requirements and specifications in several ways with respect to the Circa at Dupont.

### Specific Acts of Discrimination
### Suffered by Plaintiff Marc Fiedler at Circa at Dupont

24.     Defendant Circa at Dupont Restaurant opened for business in the Spring of 2007 at 1601 Connecticut Avenue N.W., Washington, D.C. Immediately preceding Defendant's tenancy, this location was occupied by another restaurant, Wrapworks. Wrapworks had a sidewalk-level entrance door facing Connecticut Avenue.

25.     When Circa at Dupont made alterations to the site prior to opening its restaurant, it closed the entrance on Connecticut Avenue and removed the exterior handles on that entrance's doors. The doors facing Connecticut Avenue were kept locked and the only entrance to the restaurant as altered was on Q Street. That entrance has one step, which prevents any prospective patron who uses a wheelchair, including Mr. Fiedler, from independently accessing

and enjoying the restaurant through that entrance.

26. Plaintiff Marc Fiedler, having read a newspaper item about the opening of the restaurant, attempted to dine at Circa at Dupont on Saturday, July 14, 2007. He was unable to enter the restaurant, due to the step at the entrance.

27. On Tuesday, July 17, Plaintiff Fiedler sent an email to Stephen Gavula, President of the MHG Group of Companies, and Matthew Carlin, the Chief Operating and Financial Officer of the MHG Group of Companies, complaining of the lack of an accessible entrance. He wrote that federal and local civil-rights laws require the main entrance of a restaurant to be open and readily available for use by customers with disabilities, and that the failure to meet that requirement at Circa at Dupont was unlawfully discriminatory. He received a response that the Defendant had ordered a wheelchair ramp for the Q Street entrance. The following week, on Wednesday, July 25, Plaintiff Fiedler met at the restaurant with Mr. Carlin, at Mr. Carlin's request, to discuss the wheelchair access issue. Mr. Carlin stated that he intended to install at the Q Street entrance a permanent ramp complying with the ADA Standards. Mr. Fiedler told Mr. Carlin that the restaurant that previously occupied the space had provided convenient sidewalk-level access through the doors on Connecticut Avenue, and Mr. Fiedler urged Mr. Carlin to open the locked doors on Connecticut Avenue to provide access for all restaurant patrons.

28. At the July 25 meeting, Mr. Carlin showed Mr. Fiedler a portable ramp that had been purchased to provide temporary access to the Q Street entrance to the restaurant until a permanent solution could be implemented. The portable ramp was not permanently placed at the entrance, but was to be installed upon request. There was no signage at the exterior of the restaurant notifying individuals with disabilities of the availability of the portable ramp. Mr. Fiedler informed Mr. Carlin that the portable ramp did not meet the requirements for an accessible ramp under the ADA Standards because, among other things, its slope exceeded the 1:12 maximum for an accessible ramp, Standards 4.8.2, and it did not have a level landing at the top, Standards 4.8.4, 4.13.6.

29. On July 26, Mr. Fiedler followed up this meeting with an email, discussing the difficulty of a ramp solution. In this email, Mr. Fiedler emphasized that the restaurant's continuing failure to provide an accessible entrance was unlawful.

30. On August 9, Defendant provided Mr. Fiedler with a proposed solution to ramp the Q Street entrance. The ramp as proposed would be movable, on casters, to permit Pepco access to a manhole located nearby. The proposal failed to address how the ramp would comply with the Standards in several important elements, including the ramp's slope, surface treatment, edge protection and turning radius. It also did not address issues of the possibility of the movable ramp shifting and creating gaps. Finally, it failed to address the timeline for the ramp installation, and what interim accessibility would be provided to people with disabilities prior to its installation. Mr. Fiedler responded on the same day with an email asking Defendant to address these issues.

31. On September 1 and September 8, Mr. Fiedler went back to the restaurant with the intent of dining there. On both occasions, he found that the entrance on Connecticut Avenue remained locked. A long table blocked the door, and there were no handles on the exterior of the doors. No ramp had been installed at the Q Street entrance. No signage indicated how a person with a disability should enter the restaurant.

32. On September 26, Mr. Carlin sent an email to Mr. Fiedler stating that a decision had been made to create a permanent accessible entrance on Connecticut Avenue. Mr. Fiedler responded on September 28, noting his visits to the restaurant, explaining that the lack of necessary or appropriate access to the restaurant was unacceptable and again requesting an interim access solution.

33. On November 9, Mr. Carlin sent a final email to Mr. Fiedler. He claimed that the process of creating an accessible entrance would take longer than anticipated, and would not be installed until additional restaurant space was acquired. Mr. Carlin stated that the interim access solution would be to "put the movable ramp in place when a handicapped patron wishes to enter." He dismissively concluded that "[w]e recognize this does not meet your desires, but it is

all we are prepared to offer at this time."

34. The "movable ramp" to which Mr. Carlin referred presumably was the portable ramp that he had shown to Mr. Fiedler in July and that did not comply with the Standards. It was too steep for safe access to the restaurant and lacks a level landing at the top. Moreover, it was not permanently placed at the entrance. No signage at the exterior of the restaurant notified individuals with disabilities how they could achieve access.

### Equal Rights Center's Investigation of ADA Violations at Circa at Dupont

35. The ERC conducted an inspection of the restaurant in January, 2008, to assess whether the restaurant's facilities were in compliance with the ADA. The ERC investigation found no accessible entrance to Circa at Dupont, in violation of Standards §§ 4.1.3(1), 4.1.3(8), and 4.1.6(b), and no signage directing individuals with disabilities as to means to effect entry, in violation of Standards §§ 4.1.3(8)(d) and 4.1.6(b). The investigation also revealed that, in addition to its entry barriers, Circa at Dupont contained barriers within the restaurant that prevented wheelchair users from accessing goods and services. These barriers included, but were not limited to:

a. a lack of accessible tables that wheelchair users could access or utilize in violation of Standards §§ 4.32 and 5.1;

b. a service and ordering counter that exceeded the maximum height allowance in violation of Standard § 7.2(1);

c. restrooms in which the requisite wheelchair turning space had been obstructed by the placement of furniture, in violation of Standards §§ 4.2.3 and 4.22.3; and

d. an outdoor eating area that was inaccessible to wheelchair users due to a step at its entrance from the restaurant, in violation of Standards §§ 5.4, 4.1.3(1) and 4.5.2, and a narrow gate that prevented access at its entrance from Q Street, in violation of Standards §§ 5.4, 4.3.3, and 4.13.3.

36. The investigation revealed that during breakfast hours, there was no wait service, and orders had to be placed, paid for, and received by customers at the inaccessible service and ordering counter.

37. As a result, Circa at Dupont violated the ADA, its implementing regulations and Standards, and the DCHRA.

### Plaintiffs' Notice and Defendant's Subsequent Modifications

38. On January 23rd, 2008, Plaintiffs' counsel gave Defendant formal notice of this impending action in the form of a demand letter and attached draft Complaint.

39. Subsequent to receipt of this formal notice, Defendant for the first time acknowledged its ADA and DCHRA obligation to act immediately to remove barriers at the Circa at Dupont.

40. On or about February 1st, 2008, in response to Plaintiffs' formal notice, Defendant installed hardware on and unlocked one set of doors on the Connecticut Avenue side of the restaurant. Although this new entrance provides a level entry, each leaf of the set of doors is too narrow for wheelchair access, in violation of Standards §§ 4.13.4 and 4.13.5. This creates an entrance which is not independently accessible to an individual who uses a wheelchair, requiring this person to request assistance in opening the second leaf of the door in order to enter the restaurant.

41. In addition, the threshold at this entrance exceeds ½ inch in height, in violation of Standard § 4.13.8.

42. As a result, there is still at this time no readily accessible, ADA compliant entrance to the restaurant.

43. As of February 1, in response to Plaintiffs' formal notice, Defendant removed furniture in the restaurant's restrooms which had obstructed the requisite wheelchair turning space.

44. Despite Plaintiffs' formal notice, all other barriers at the restaurant remain, including a lack of accessible tables, inaccessible ordering and service counter, and an

inaccessible outdoor eating area.

45. Plaintiff Marc Fiedler would patronize Circa at Dupont if its entrance and interior barriers did not render it inaccessible to customers who use wheelchairs. His inability to patronize Defendant's restaurant makes him feel frustrated and is a source of inconvenience, humiliation, and injury.

### Plaintiffs Have Been Injured By Defendant's Discriminatory Conduct

46. As a result of Defendant's past and continuing failure to provide entrance features, dining areas, service counters, and restrooms at Circa at Dupont restaurant that are readily accessible to and usable by persons with disabilities as required by the ADA and DCHRA, Plaintiff Marc Fiedler has suffered, and will continue to suffer, injury including, but not limited to, a deprivation of his right to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Circa at Dupont restaurant, as well as humiliation, embarrassment, and emotional distress from the indignity and stigma of discrimination.

47. As a result of Defendant's past and continuing failure to provide the entrance features, dining areas, service counters, and restrooms at its restaurant in a manner that is readily accessible to and usable by persons with disabilities as required by the ADA and DCHRA, Plaintiff ERC and its members have suffered, and will continue to suffer, injury including, but not limited to:

   a. the frustration of the purpose of the ERC to achieve equality of access for persons with mobility impairments and the elimination of discrimination against persons with disabilities in public accommodations in Washington, D.C., and

   b. the diversion of the ERC's resources necessary to identify and counteract Defendant's unlawful discriminatory practices in Washington, D.C., and

   c. interference with the interests of the ERC and its members in protecting their rights to live in and enjoy a community that is free from discrimination on the basis of physical

disability in Washington, D.C.

48. Defendant has acted with wanton and reckless indifference to the legal rights and the physical safety of individuals with disabilities. In particular, having been expressly informed by Mr. Fiedler of its obligations under the law to provide equal access to its premises for people with disabilities, Defendant has deliberately and willfully continued violating the ADA and the DCHRA by failing to provide an accessible entrance and otherwise denying equal access to persons with disabilities to Circa at Dupont for more than six months.

### Injunctive Relief is Necessary and Appropriate to Protect the Rights of the Plaintiffs

49. Defendant's failure to provide entrance features, service counters, and dining areas as required by the ADA and the DCHRA denies persons with disabilities the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Circa at Dupont restaurant.

50. Plaintiffs have no plain, adequate, or complete remedy at law. Plaintiff Marc Fiedler and the ERC and its members have suffered, are suffering, and will continue to suffer irreparable injury as a result of Defendant's continuing discriminatory conduct.

### FIRST CLAIM FOR RELIEF

### Violations of the Americans with Disabilities Act

51. Plaintiffs incorporate by reference paragraphs 1 - 50 as if fully set forth herein.

52. At all times relevant to this action, the ADA was in full force and effect in the United States.

53. The Circa at Dupont restaurant is a "place of public accommodation" within the meaning of Section 302(a) of the ADA (codified at 42 U.S.C. § 12182(a)). 42 U.S.C. § 12181(7)(B).

54. Plaintiff Marc Fiedler is a person with a "disability" within the meaning of

Section 3(2) of the ADA (codified at 42 U.S.C. § 12102(2)).

55. Plaintiff ERC is an organization whose mission includes representing the interests of its members, many of whom are persons with disabilities within the meaning of the ADA, and eliminating discrimination against persons with disabilities.

56. Title III of the ADA applies to the Defendant because it "owns, leases (or leases to) or operates a place of public accommodation," within the meaning of Section 302(a) of the ADA (codified at 42 U.S.C. § 12182(a)).

57. The ADA prohibits discrimination against persons with disabilities in places of public accommodation. The ADA provides in pertinent part that, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

58. The ADA requires that public accommodations must make alterations to their facilities "in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(2). The U.S. Department of Justice regulation to the ADA similarly requires that "[a]ny alteration to a place of public accommodation or a commercial facility, after January 26, 1992, shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 28 C.F.R. § 36.402(a)(1).

59. The entry to Defendant's restaurant requires a person with a disability to request assistance to enter, and then to wait until assistance is provided with the noncompliant doors, and therefore is not "readily accessible", in violation of the ADA. 42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.402(a)(1).

60. The alterations to the Q Street entrance to Circa at Dupont violated the ADA because that entrance is not readily accessible to and usable by individuals with disabilities,

including individuals who use wheelchairs. 42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.402(a)(1).

61. The ADA prohibits public accommodations from affording individuals with disabilities the opportunity to participate in or benefit from goods, services, privileges, advantages, or accommodations that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

62. The ADA also prohibits public accommodations from providing individuals with disabilities goods, services, facilities, privileges, advantages, or accommodations that are different or separate from those provided to other individuals, unless doing so is necessary to the provision of the goods, services, facilities, privileges, advantages, or accommodations in question. 42 U.S.C. § 12182(b)(1)(A)(iii).

63. Defendant's practice of requiring that persons with disabilities request assistance to enter its restaurant does not provide the same level of independent, convenient, and dignified entry provided to other members of the public, in violation of the ADA. 42 U.S.C. § 12182(b)(1)(A)(ii) & (iii).

64. The ADA requires that public accommodations make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii).

65. Defendant's failure to provide an accessible entrance to Circa at Dupont, provide accessible tables, and provide wait service during all business hours (for patrons with disabilities who are unable to access the inaccessible service counter) constitute failures to make reasonable modifications in policies, practices, or procedures necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of the ADA. 42 U.S.C. § 12182(b)(2)(A)(ii).

66. The ADA requires that public accommodations remove architectural barriers in

existing facilities where barrier removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Measures taken to remove architectural barriers must comply with the Standards unless it would not be readily achievable to do so. 28 C.F.R. § 36.304(d).

67. Defendant's failure to remove architectural barriers in compliance with the Standards at its entrances, counter, and dining areas violates the ADA because removal of these barriers is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(d).

68. Defendant's failure to comply with the ADA has resulted and will continue to result in harm to Plaintiffs and other individuals with disabilities, unless and until Defendant is ordered by this Court to make modifications to its restaurant and its policies, practices, and procedures pursuant to the ADA and Standards.

## SECOND CLAIM FOR RELIEF

### Violation of the District of Columbia Human Rights Act

69. Plaintiffs incorporate by reference paragraphs 1-68 as if fully set forth herein.

70. At all times relevant to this action, the DCHRA was in full force and effect in Washington, D.C.

71. Plaintiff Marc Fiedler is a person with a disability within the meaning of the DCHRA. D.C. Code § 2-1401.02(5A).

72. Plaintiff ERC is an organization whose mission includes representing the interests of its members, many of whom are persons with disabilities, within the meaning of the DCHRA, and eliminating discrimination against persons with disabilities.

73. Circa at Dupont is a "place of public accommodation" within the meaning of the DCHRA. D.C. Code § 2-1401.02(24).

74. Defendant is subject to the provisions of the DCHRA because it transacts business in Washington, D.C.

75. The DCHRA makes it an unlawful discriminatory practice to "deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, and accommodations of any place of public accommodations" "wholly or partially for a discriminatory reason based on the actual or perceived . . . disability . . . of any individual." D.C. Code § 2-1402.31(a)(1).

76. The DCHRA further provides that "[a]ny practice which has the effect or consequence of violating any of the provisions of [the DCHRA] shall be deemed to be an unlawful discriminatory practice." D.C. Code § 2-1402.68.

77. Defendant has violated and continues to violate the DCHRA because its facilities and practices, *inter alia,* have the effect or consequence of denying individuals with disabilities, including Plaintiffs, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of Defendant's restaurant.

78. Defendant's conduct has harmed Plaintiffs and will continue to harm Plaintiffs unless and until Defendant is ordered by this Court to make its restaurant accessible to individuals who depend on wheelchairs for mobility and other individuals with disabilities.

79. For its violations of the DCHRA, and in accordance with D.C. Code § 2-1403.16(b), Defendant is liable to Plaintiffs for compensatory damages, punitive damages, and reasonable attorneys' fees, expenses, and costs in amounts to be determined at trial, and all other available relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Marc Fiedler and the ERC respectfully pray that this Court:

a. Declare Defendant's restaurant in violation of the ADA and DCHRA to the extent that it does not comply with the ADA and its implementing regulations and standards;

b. Enter a permanent injunction requiring Defendant to (i) bring its restaurant facility into compliance with both the ADA and the DCHRA and (ii) modify its policies, practices, and procedures to comply with the ADA and DCHRA.

c.  Enter judgment awarding Plaintiffs compensatory damages under DCHRA in an amount appropriate to the proof at trial;

d.  Enter judgment against Defendant awarding punitive damages to punish it and deter it and others from engaging in similar behavior;

e.  Award Plaintiffs their costs and attorneys' fees, including litigation expenses, reasonably incurred in the prosecution of this action; and

f.  Award the Plaintiffs such other and further relief as the Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, by counsel and pursuant to Federal Rule of Civil Procedure 38(b), hereby demand a trial by jury on all claims so triable in this action.

Dated this 11th day of February, 2008

>MARC FIEDLER and
>EQUAL RIGHTS CENTER,
>
>By their attorneys
>
>
>_____
>Alan Swirski, Bar No. 420046
>1440 New York Ave., NW
>Washington, D.C. 20005
>Telephone: (202) 371-7610
>
>
>_____
>Elaine Gardner, Bar No. 271262
>**Washington Lawyers' Committee for Civil Rights and Urban Affairs**
>11 Dupont Circle, N.W.
>Suite 400
>Washington, D.C. 20036
>(202) 319-1000

**CIVIL COVER SHEET**
JS-44
(Rev.1/05 DC)

### I (a) PLAINTIFFS

Marc Fiedler and
 Equal Rights Center

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Alan Swirski
1440 New York Ave., NW
Washington, DC  20005

### DEFENDANTS

MHG Cafe Dupont, LLC
t/a Circa at Dupont

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**○ A.** *Antitrust*
- ☐ 410 Antitrust

**○ B.** *Personal Injury/Malpractice*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C.** *Administrative Agency Review*
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E.** *General Civil (Other)*   OR   **○ F.** *Pro Se General Civil*

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☒ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
● 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 U.S.C. 12181 et seq. Defendant's restaurant is a place of public accommodation that discriminates against persons with disabilities.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ Unspecified    Check YES only if demanded in complaint
JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 2/11/08   SIGNATURE OF ATTORNEY OF RECORD _(signature)_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.